### A. SCHRADER'S SON, Inc., v. JAMES MARTIN CORPORATION et al. *

(Circuit Court of Appeals, Second Circuit. December 3, 1923.)

#### No. 79.

1. Patents ⬅️168(2)—Claims cannot be abandoned and then recaptured.

Where narrow claims were canceled to substitute broad claims, they cannot be recaptured, in the absence of inadvertence, accident, or neglect, under Rev. St. § 4917 (Comp. St. § 9462).

2. Patents ⬅️328—Hammond patent, 1,035,185, claims 1, 2, 3, 4, 6, and 15, held not infringed.

Hammond patent, No. 1,035,185, claims 1, 2, 3, 4, 6, and 15, for a valve for pneumatic tires held not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by A. Schrader's Son, Inc., against the James Martin Corporation and another. From a decree dismissing the complaint, plaintiff appeals. Affirmed.

The suit was for the infringement (1) of certain claims of United States letters patent to Robert Faries No. 899,466, granted September 22, 1908, on application filed March 26, 1908; and (2) inter alia, of claims 1, 2, 3, 4, and 6, and claim 15, of United States letters patent to William P. Hammond and Theodore A. Hammond, No. 1,035,185, granted August 13, 1912, on application filed January 17, 1907. The decree dismissed as to the claims of both patents, but the appeal is only from so much of the decree as relates to the claims, enumerated supra, of the Hammond patent.

While the application for the Faries patent was filed later than that for the Hammond patent, nevertheless the Faries patent issued before the Ham-

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 44 Sup. Ct. 331, 68 L. Ed. ——.

mond patent. One explanation of this situation is that these applications went originally to and were considered by two different divisions of the Patent Office. On October 6, 1908, the Hammond application had been rejected seven times. The Faries patent was granted September 22, 1908. After this fact became known to the Hammonds, they incorporated the Faries claims in their application and requested a declaration of an interference, stating: "The subject-matter of this [Faries] patent is identical with that of applicant's application."

To. this the Patent Office Examiner answered that he had the Faries patent before him when he acted on the Hammond application on May 14, 1909. On February 3, 1910, the Patent Office wrote the Hammonds: "So far no claims stand allowed or have apparently been considered patentable. * * * As there are no allowed claims in the case, it is not, of course, in condition for interference with the patent to Faries referred to. * * * If, however, applicant wishes only claims 20 to 29, inclusive, considered in the case, he should cancel claims 1 to 19, inclusive, when an action on the merits of the case will be made. Action on the merits is deferred until one or the other of the above requirements has been complied with."

On March 12, 1910, the Hammonds canceled claims 1–19, inclusive, and added claims "drawn along lines of claim 5 of the Faries patent," and stated: "In canceling the old claims, applicants do not wish to be understood as acquiescing in the pertinence of the references cited by the Examiner in the rejection of the said claims, but are canceling them in order to substitute new ones, which appear to be clearly readable upon the structure illustrated."

Finally, the case was allowed, the patent to the Hammonds issued, and the interference was declared; Faries letting it go by default, and the Hammonds being successful. Disclaimers in respect of both patents were filed in the circumstances infra on July 11, 1922, by plaintiff as owner of both patents.

The Faries patent was for a "pressure indicator and regulator," and Faries stated in his specification:

"My invention" relates to pressure indicators and regulators, and my object is to provide a device of this description which in some of its embodiments is specially fitted for pneumatic tires, such as those used for automobiles, but which is applicable to any fluid pressure receiving apparatus, by which the exact pressure within the tire or other apparatus may be indicated, and by which any excess of pressure may be automatically relieved, and which, as in the case of pneumatic tires, may be a permanent attachment, so that the bother or annoyance of applying, removing, and caring for the indicator may be obviated. * * *

"In view of the fact that I have developed my invention in a form suited for pneumatic tires, and I desire to cover by my patent, in addition to its broad or general features, those features of my device that are of special importance in relation to pneumatic tires, I illustrate in the drawings and shall describe such an embodiment of my invention, with the understanding that I do not thereby restrict myself, in the embodiment of the broad features thereof, to its use with pneumatic tires or any particular fluid pressure receiving or containing apparatus."

The Hammond patent was for a "valve for pneumatic tires," and the Hammonds stated in their specification:

"Our invention relates to valve stems such as are used on pneumatic tires for wheels of vehicles, and the object of the invention is to produce a valve stem of simple and reliable construction, which shall automatically regulate and determine the air pressure in the tire at the desired degree. In all valve stems at present generally known and used, of which we are aware, there are no means provided for determining or regulating the degree of inflation or of the air pressure within the tire, and where this is to be ascertained separate and special devices or apparatus, such as pressure gages, have to be provided. Our invention is intended to obviate the use of these special devices, and provide a pressure regulating or determining device, which forms part of the valve stem itself, and which is thus in place and always available for securing proper tire inflation conditions, and this without materially changing the form, appearance, or dimensions of the valve stem, or interfering with its use in the usual way."

Arthur C. Fraser, Cornelius C. Billings, and Eugene V. Myers, all of New York City, for appellant.

Hugh C. Lord, of Erie, Pa., and William S. Pritchard, of New York City, for appellees.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). The principle which the Hammonds sought to cover is illustrated in their claim 1, here, inter alia, sued upon:

"1. The combination of movably mounted valve mechanism, comprising a valve and its seat, the valve being movable to and from its seat, and pressure indicating means for showing varying pressures, operated by the movement of said mechanism."

The Hammond invention is described in detail in their claim 15:

"15. The combination, with a pneumatic tire, of valve mechanism therefor, comprising two telescoping members, means for securing one of said telescoping members to a tire, an inwardly opening valve in the other of said telescoping members, means operably associated with said telescoping members to form an air tight connection therebetween, one of the telescoping members provided with a chamber adapted to communicate with the interior of the tire, the pressure within the chamber tending to produce sliding movement of the telescoping members, a spring opposing the same sliding movement of the telescoping members, and means whereby the pressure may be indicated by the movement of the telescoping members."

What Faries claimed is well disclosed in his claim 9:

"9. The combination, with a pneumatic tire, of a pressure indicator comprising a slidable tube and a tube attached to the tire, an elastic tube attached to said slidable tube and leading from the interior of the tire, and having a head or flange, and means for clamping said head or flange to the tire."

In view of the facts supra, the District Court held that Faries had no right to the claims adopted from his patent by the Hammonds and awarded to them in interference, and that it became necessary for Faries to file a disclaimer. This neither Faries nor his transferee had done up to June 26, 1922, the date when the court handed down its opinion. It was shortly thereafter—i. e., on July 11, 1922—that plaintiff filed its disclaimer of certain claims. On July 14, 1922, plaintiff petitioned the District Court for a rehearing as to the remaining claims which it urged were valid, but the petition was denied.

On September 22, 1922, plaintiff accepted the court's ruling as to the Faries patent and consented that a decree dismissing plaintiff's complaint in respect thereof be entered. In the opinion of June 26, 1922, the District Court had held in regard to the Hammond patent as follows:

"The claims relied on in the Hammond patent are substantially those taken from Faries, and the question is: How are they to be construed? Undoubtedly they were construed in the Patent Office for purposes of interference in accordance with the rule stated in Engel v. Sinclair, 152 O. G. 489. But, entirely apart from the rule of the case last cited, it is obvious, from the file wrapper and contents and the history of the interference, that Hammond placed a very broad construction on the claims he took from Faries in order to get into interference.

"But he now asks this court substantially to restrict his claim to a tire stem including an inflation valve. But this is the exact contention most vigorously made by Hammond in support of the claims which he abandoned in order to take over Faries. Under very familiar decisions I do not think this can be done. It seems to me that the plaintiff's patentees and their assignees have gotten themselves into this legal cul de sac, and that the bill must be dismissed."

This led plaintiff to file a disclaimer dated July 11, 1922, as follows:

"Your petitioner, therefore, does hereby disclaim from the scope of each and all of the claims of said patent No. 1,035,185: (1) Any combination which does not constitute a 'valve for pneumatic tires,' as such term is understood in the art, and was so understood at the date of said patent, that is to say, a valve or valve stem constructed and adapted for connection with a pump or other inflating means for the purpose of inflating the tire; and (2) any combination of elements in which the 'valve mechanism' set forth in the claims does not comprise the inwardly opening check valve and seat of such pneumatic tire valve or valve stem."

The petition for rehearing, dated July 14, 1922, recognizing the force of Judge Hough's decision below that the claims of the Hammond patent were too broad, and that the disclaimer, supra, furnished the only hope of saving the claims, urged:

"That because of the said disclaimer the scope of the claims thereof is limited in precise accord and harmony with the specification, and in such manner as to effectually distinguish the invention claimed from all valves of the prior art in evidence, so that it cannot be said as a matter of law that said claims are so broad as to be anticipated by such prior art."

After this petition was denied, plaintiff moved for leave to file a supplemental bill, the purpose of which was, in effect, to set up the narrowed scope of the Hammond claims. This petition was denied.

All of the foregoing may be summarized as follows: The Hammonds had narrow claims; they canceled them to obtain the broad claims of the Faries patent; their transferee, the present owner of the Hammond patent, now by means of a disclaimer wishes to return to the narrow claims so as to apprehend defendants as infringers. We agree with the District Court that what plaintiff now seeks are claims restricted to a tire stem including an inflation valve, or, in other words, precisely what the Hammonds gave up in order to get the Faries claims. Whether the Hammonds were right or wrong in insisting in the Patent Office that their claims which they subsequently canceled were good is no longer the question.

[1, 2] The point is that claims cannot be abandoned and then recaptured in this way. It is not always easy to determine one's course, but the necessity of decision presents one of the hazards incident to business and professional life. It is contended that the procedure of the Patent Office put the Hammonds in the position which the plaintiff now inherits. We think not. There is usually danger in broad claims unless the invention takes on a major aspect. Faries' claims, here considered, were not confined to tire stems including an inflation valve; we agree with the District Court that those of the Hammonds originally were. When, therefore, the Hammonds sought the broader claims, they knew precisely what they were doing; for, even in the effort to preserve their rights, quoted supra, they did not state that

they declined to acquiesce in rejection. Their language indicated merely that they did not agree with the Examiner in the pertinence of the references cited by him, and they definitely canceled the claims "in order to substitute new ones."

Rev. St. § 4917 (Comp. St. § 9462), provides:

"Whenever, through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, a patentee has claimed more than that of which he was the original or first inventor or discoverer, his patent shall be valid for all that part which is truly and justly his own, * * * may, on payment of the fee required by law, make disclaimer. * * *"

It is not necessary to discuss the possible situations which disclaimers filed under various circumstances may develop. Here we are dealing with a comparatively simple state of facts, which fails to disclose the "inadvertence, accident or neglect" without which plaintiff cannot avail of the remedial benefits of the statute. 2 Robinson on Patents, c. 644, p. 282.

We have not overlooked the argument of defendants that, in any event, on the facts in this record, plaintiff cannot prevail against them. Autopiano Co. v. American Player Action Co., 222 Fed. 276, 138 C. C. A. 38. But we have concluded to dispose of the appeal on more comprehensive grounds.

Decree affirmed, with costs.